UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DAVID W. NABALA<br>4038 41st St. N<br>Arlington, VA 22207<br><br>CHUKS EMENIKE IWUNNA<br>3418 Beechcraft Drive<br>Alexandria, VA 22306<br><br>On Behalf of Themselves and All<br>Others Similarly Situated<br><br>    Plaintiffs<br><br>    v.<br><br>NEW HORIZON SECURITY SERVICES,<br>    INC.<br>Registered Agent:<br>National Registered Agents Inc.<br>4701 Cox Road, Suite 285<br>Glen Allen VA 23060<br><br>    and<br><br>JOHN M. FRAZER<br>5586 Tournament Dr<br>Haymarket, VA 20169<br><br>    Defendants. | Case No.: _____<br><br>**JURY TRIAL DEMANDED** |

## COLLECIVE ACTION COMPLAINT FOR FAILURE TO PAY WAGES

Plaintiffs David W. Nabala and Chuks Emenike Iwunna (hereinafter, "Plaintiffs"), by and through undersigned counsel, on behalf of themselves and all others similarly situated, hereby submits their Collective Action Complaint for Failure to Pay Wages against Defendant New Horizon Security Services, Inc. and John M. Frazer ("Defendants"), to recover unpaid overtime wages, other unlawful deductions, liquidated damages, reasonable attorney's fees and costs under

1

Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. (hereinafter "FLSA").

## PARTIES AND JURISDICTION

1.  Plaintiffs David W. Nabala ("Mr. Nabala") and Chuks Emenike Iwunna ("Mr. Iwunna") are adult residents of the Commonwealth of Virginia. By acting as the named Plaintiffs in this action, Plaintiffs hereby confirm their consent to participate as a Plaintiff in an action under the FLSA.

2.  Defendant New Horizon Security Services, Inc. is a corporation formed under the laws of the Commonwealth of Virginia with its principal place of business in Prince William County, Virginia.

3.  Defendant John M. Frazer is the owner and principal person who exerts control over Defendant New Horizon Security Services, Inc.

4.  At all times relevant, the Defendants were Plaintiffs' "employer" for purposes of the FLSA.

5.  At all times relevant, each Plaintiff worked as a security guard at client sites for the Defendants in northern Virginia.

6.  At all times relevant, Defendants generated gross revenues exceeding Five Hundred Thousand Dollars ($500,000.00) and qualified as an "enterprise" within the meaning of § 3(r) of the FLSA (29 U.S.C. § 203(r)).

7.  At all times relevant, Plaintiffs and other employees of Defendants were individual employees who engaged in interstate commerce as set forth under 29 U.S.C. §§ 206-207.

8.  This Court has jurisdiction over Defendants pursuant to § 16(b) of the FLSA, 29 U.S.C. §216(b), and 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any

Act of Congress regulating commerce." Subject matter jurisdiction is invoked under 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTS

9. Mr. Nabala began working for the Defendants July 22, 2015 at the promised rate of $18.00 an hour where he performed the duties of a security guard on behalf of and at the direction of the Defendants. He worked throughout Fairfax County, at facilities that had contracted with the Defendants for security services. He worked until August 28, 2016. Each week Mr. Nabala would be scheduled hours at different locations in Fairfax County. He was paid at differing rates per hour and he was not paid for overtime hours. In total Mr. Nabala is owed the following wages:

A. For the time period of July 16, 2015 to July 31, 2015 Mr. Nabala worked a total of five (5) regular hours and fifteen (15) training hours. Training hours were paid at a rate of half his hourly rate ($9.00/hour). He was paid at a rate of $15.60 per hour rather than the rate of $18.00 an hour as promised, and he was paid only $7.25 per hour for his training, totaling $150.00 instead of the $180.00 owed. He is owed $30.00 for wages during this pay period.

B. For the time period of August 1,2015 to August 15, 2015 Mr. Nabala worked a total of eighty (80) regular hours and twenty-three and a half (23.5) overtime hours. He is owed $ 347.01 for unpaid wages during this pay period.

C. For the time period of August 16, 2015 to August 31, 2015 Mr. Nabala worked a total of eighty (80) regular hours and twenty-one and a half (21.5) overtime hours. He is owed $215.15 for unpaid wages during this pay period.

D. For the time period of September 1, 2015 to September 15, 2015 Mr. Nabala worked a total of eighty (80) regular hours and twenty-seven (27) overtime hours. He is owed $415.26 for unpaid wages during this pay period.

E. For the time period of September 16, 2015 to September 30, 2015 Mr. Nabala worked a total of eighty (80) regular hours and fourteen and a half (14.5) overtime hours. He is owed $ 349.50 for unpaid wages during this pay period.

F. For the time period of October 1, 2015 to October 15, 2015 Mr. Nabala worked a total of eighty (80) regular hours and forty-four and twenty-five minutes (44. 25) overtime hours. He is owed $366.66 for unpaid wages during this pay period.

G. For the time period of October 16, 2015 to October 31, 2015 Mr. Nabala worked a total of eighty (80) regular hours and eighteen (18) overtime hours. He is owed $446.00 for unpaid wages during this pay period.

H. For the time period of November 1, 2015 to November 15, 2015 Mr. Nabala worked a total of eighty (80) regular hours and eleven and a half (11.5) overtime hours. He is owed $306.58 for unpaid wages during this pay period.

I. For the time period of November 16, 2015 to November 30, 2015 Mr. Nabala worked a total of eighty (80) regular hours and seventeen (17) overtime hours. He is owed $531.00 for unpaid wages during this pay period.

J. For the time period of December 1, 2015 to December 15, 2015 Mr. Nabala worked a total of eighty (80) regular hours and thirty-seven and fifteen minutes (37.15) overtime hours. He is owed $632.25 for unpaid wages during this pay period.

K.    For the time period of December 16, 2015 to December 31, 2015 Mr. Nabala worked a total of eighty (80) regular hours and twenty-six (26) overtime hours. He is owed $219.00 for unpaid wages during this pay period.

L.    For the time period of January 1, 2016 to January 15, 2016 Mr. Nabala worked a total of eighty (80) regular hours and twenty-nine (29) overtime hours. He is owed $227.66 for unpaid wages during this pay period.

M.    For the time period of February 1, 2016 to February 15, 2016 Mr. Nabala worked a total of eighty (80) regular hours and fifty-two hours and a half (52.5) overtime hours. He is owed $1,781.99 for unpaid wages during this pay period

N.    For the time period of February 16, 2016 to February 28, 2016 Mr. Nabala worked a total of eighty (80) regular hours and sixty-six (66) overtime hours. He is owed $175.80 for unpaid wages during this pay period.

O.    For the time period of February 29, 2016 to March 13, 2016 Mr. Nabala worked a total of eighty (80) regular hours and thirty-four (34) overtime hours. He is owed $353.40 for unpaid wages during this pay period.

P.    For the time period of March 14, 2016 to March 27, 2016 Mr. Nabala worked a total of eighty (80) regular hours and twenty and a half (20.5) overtime hours. He is owed $1,236.62 for unpaid wages during this pay period.

Q.    For the time period of March 28, 2016 to April 10, 2016 Mr. Nabala worked a total of eighty (80) regular hours and twenty (20) overtime hours. He is owed $774.00 for unpaid wages during this pay period.

R. For the time period of April 11, 2016 to April 24, 2016 Mr. Nabala worked a total of eighty (80) regular hours and twenty-three (23) overtime hours. He is owed $502.00 for unpaid wages during this pay period.

S. For the time period of April 25, 2016 to May 8, 2016 Mr. Nabala worked a total of eighty (80) regular hours and thirty-two and a half (32.5) overtime hours. He is owed $24.00 for unpaid wages during this pay period.

T. For the time period of May 9, 2016 to May 22, 2016 Mr. Nabala worked a total of eighty (80) regular hours and thirty-two and a half (32.5) overtime hours. He is owed $596.25 for unpaid wages during this pay period.

U. For the time period of May 23, 2016 to June 5, 2016 Mr. Nabala was paid in full for the hours worked.

V. For the time period of June 6, 2016 to June 19, 2016 Mr. Nabala worked a total of eighty (80) regular hours and one (1) overtime hour. He is owed $14.28 for unpaid wages during this pay period.

W. For the time period of June 20, 2016 to July 3, 2016 Mr. Nabala worked a total of eighty (80) regular hours and thirteen (13) overtime hours. He was paid at different rates and not for all the hours he worked.

X. For the time period of July 4, 2016 to July 17, 2016 Mr. Nabala worked a total of eighty (80) regular hours and forty-seven (47) overtime hours. He is owed $366.00 for unpaid wages during that pay period.

Y. For the time period of July 18, 2016 to July 31, 2016 Mr. Nabala worked a total of eighty (80) regular hours and thirty-two (32) overtime hours. He is owed $368.40 for unpaid wages during that pay period.

Z.     For the time period of August 1, 2016 to August 14, 2016 Mr. Nabala worked a total of eighty (80) regular hours and twenty-eight (28) overtime hours. He is owed $344.78 for unpaid wages during that pay period.

10.    In total Mr. Nabala is owed $10,531.86 in unpaid wages and overtime.

11.    Mr. Iwunna began working for the Defendants in 2012 at the promised rate of $15.60 an hour where he performed the duties of a security guard on behalf of and at the direction of the Defendants. He worked throughout Fairfax County, at facilities that had contracted with the Defendants for security services. He worked until November 3, 2016. Each week Mr. Iwunna would be scheduled hours at different locations in Fairfax County. He was paid at differing rates per hour and he was not paid for overtime hours. In total Mr. Iwunna is owed the following wages:

A.     The amount of wages owed to Mr. Iwunna from his start date until December 14, 2014 is under investigation and has not been determined.

B.     For the time period of December 16, 2014 to December 31, 2014 Mr. Iwunna worked a total of eighty-eight (88) regular hours and thirty-one hours and forty-five minutes (31.75) overtime hours. He is owed $ 61.91 for unpaid wages during that pay period.

C.     For the time period of January 1, 2015 to January 15, 2015 Mr. Iwunna was paid what he was owed.

D.     For the time period of January 16, 2015 to January 31, 2016 Mr. Iwunna worked a total of eighty-eight (88) regular hours and sixty (60) hours and fifteen minutes (60.25) overtime hours. He is owed $ 137.33 for unpaid wages during that pay period.

E.     For the time period of February 1, 2015 to February 15, 2015 Mr. Iwunna worked a total of eighty (80) regular hours and thirty-seven (37) hours and fifteen minutes (37.25) overtime hours. He is owed $ 153.46 for unpaid wages during that pay period.

F. For the time period of February 16, 2015 to February 28, 2015 Mr. Iwunna worked a total of eighty (80) regular hours and twenty hours (20) overtime hours. He is owed $41.50 for unpaid wages during that pay period.

G. For the time period of March 1, 2015 to March 15, 2015 Mr. Iwunna worked a total of eighty (80) regular hours and fifty-five hours (55) overtime hours. He is owed $28.27 for unpaid wages during that pay period.

H. For the time period of March 16, 2015 to March 31, 2015 Mr. Iwunna worked a total of eighty (104) regular hours and forty-eight hours and forty-five minutes (48.75) overtime hours. He is owed $ 24.25 for unpaid wages during that pay period.

I. For the time period of April 1, 2015 to April 15, 2015 Mr. Iwunna worked a total of eighty (80) regular hours and forty-eight hours (48) overtime hours. He is owed $130.25 for unpaid wages during that pay period.

J. For the time period of April 16, 2015 to April 30, 2015 Mr. Iwunna worked a total of eighty (80) regular hours and fifty-five (55) overtime hours. He is owed $193.08 for unpaid wages during that pay period.

K. For the time period of May 1, 2015 to May 15, 2015 Mr. Iwunna worked a total of eighty (80) regular hours and forty-eight hours (48) overtime hours. He is owed $130.25 for unpaid wages during that pay period.

L. For the time period of May 16, 2015 to May 31, 2015 Mr. Iwunna worked a total of eighty (80) regular hours and forty-eight hours (48) overtime hours. He is owed $130.25 for unpaid wages during that pay period.

M. For the time period of June 1, 2015 to June 15, 2015 Mr. Iwunna worked a total of eighty (80) regular hours and fifty-five and a half (55.5) overtime hours. He is owed $253.07 for unpaid wages during that pay period.

N. For the time period of June 16, 2015 to June 30, 2015 Mr. Iwunna worked a total of eighty (80) regular hours and thirty-eight hours and forty-five minutes (38.75) overtime hours. He is owed $130.25 for unpaid wages during that pay period.

O. For the time period of July 1, 2015 to July 15, 2015 Mr. Iwunna worked a total of eighty (80) regular hours and thirty-eight hours and forty-five minutes (38.75) overtime hours. He is owed $316.45 for unpaid wages during that pay period.

P. For the time period of July 16, 2015 to July 31, 2015 Mr. Iwunna worked a total of eighty (80) regular hours and fifty-eight hours (58) overtime hours. He was paid all of his wages due and an additional amount of $22.55.

Q. For the time period of August 1, 2015 to August 15, 2015 Mr. Iwunna worked a total of eighty (80) regular hours and forty-seven and a half (47.5) overtime hours. He is owed $39.45 for unpaid wages during that pay period.

R. For the time period of August 16, 2015 to August 31, 2015 Mr. Iwunna worked a total of eighty-eight (88) regular hours and thirty-seven (37) overtime hours. He was paid all of his wages due and an additional amount of $30.53.

S. For the time period of September 1, 2015 to September 15, 2015 Mr. Iwunna worked a total of eighty (80) regular hours and fifty-three (53) overtime hours. He is owed $282.05 for unpaid wages during that pay period.

T. For the period of time between September 16, 2015 and February 28, 2016 Mr. Iwunna worked an undetermined amount of overtime hours for which he was not paid.

U.  For the month of March 2016, the Defendants' pay records show that Mr. Iwunna worked five-hundred four (504) hours of regular time and two-hundred ninety-four and forty-five minutes (294.7) hours of overtime. This would have Mr. Iwunna working twenty-six (26) hour days each day of the month.

V.  For the month of April 2016 the Defendants' pay records show that Mr. Iwunna worked Mr. Iwunna worked a total of one-hundred and forty-four (144) regular hours and forty-one (41) overtime hours. He is owed $5.76 for unpaid wages for that pay period.

W.  For the month of May 2016 the Defendants' pay records show that Mr. Iwunna worked a total of one-hundred and thirty-two (132) regular hours and twenty-eight (28) overtime hours. He is owed $50.40 for unpaid wages for that pay period.

X.  The paycheck issued on June 6, 2016 shows that Mr. Iwunna worked a total of eighty (80) regular hours and eighteen and a half (18.5) overtime hours. He is owed $150.30 for unpaid wages for that pay period.

Y.  The paycheck issued on June 20, 2016 shows that Mr. Iwunna worked a total of eighty (80) regular hours and eighteen and a half (18.5) overtime hours. He is owed $150.30 for unpaid wages for that pay period.

Z.  The paycheck issued on July 1, 2016 shows that Mr. Iwunna worked a total of forty-six and fifty-one minutes (46.85) regular hours and twenty-five (25) overtime hours. He is owed $115.20 for unpaid wages for that pay period.

AA.  The paycheck issued on July 18, 2016 shows that Mr. Iwunna worked a total of seventy-two (72) regular hours and twenty-eight (28) overtime hours. He is owed $21.60 for unpaid wages for that pay period.

BB. The paycheck date issued on August 1, 2016 shows that Mr. Iwunna worked a total of eighty (80) regular hours and thirty and a half (30.5) overtime hours. He is owed $107.10 for unpaid wages for that pay period.

CC. The paycheck issued on August 15, 2016 shows that Mr. Iwunna worked a total of eighty (80) regular hours and fifteen (15) overtime hours. He was also paid $705.60 for retro pay, for which no explanation is offered.

DD. The paycheck issued on August 29, 2016 shows that Mr. Iwunna worked a total of eighty (80) regular hours and twenty-four (24) overtime hours. He was also paid $1,170.00 for retro pay, for which no explanation is offered.

EE. The paycheck date issued on September 12, 2016 shows that Mr. Iwunna worked a total of eighty (80) regular hours and thirty-two (32) overtime hours. He is owed $86.40 for unpaid wages during that pay period.

FF. The paycheck issued on September 26, 2016 shows that Mr. Iwunna worked a total of eighty (80) regular hours and thirty-two (32) overtime hours. He is owed $86.40 for unpaid wages during that pay period.

GG. The paycheck issued on October 7, 2016 shows that Mr. Iwunna worked a total of eighty (80) regular hours and fifty-three (53) overtime hours. He is owed $90.00 for unpaid wages for that pay period.

HH. The paycheck issued on October 24, 2016 shows that Mr. Iwunna worked a total of eighty (80) regular hours and thirty-seven (37) overtime hours. He is owed $86.40 for unpaid wages during that pay period.

II. The paycheck issued on November 7, 2016 Mr. Iwunna shows that Mr. Iwunna worked a total of eighty (80) regular hours and ten (10) overtime hours. He is owed $35.10 for unpaid wages for that pay period.

JJ. The paycheck issued on November 21, 2016 shows that Mr. Iwunna worked a total of sixty-six and half (66.5) regular hours and six and a half (6.5) overtime hours. This is the only instance where he was paid for all of his time in this period.

12. In sum, the total amount of unpaid wages owed to Mr. Iwunna has not yet been determined but exceeds $5,000.00

13. Mr. Iwunna sought and received preapproved vacation time for a vacation he took in December 2016. At the time he had ninety-two (92) hours of vacation time worth $1,435.20. He was promised this vacation time. When he returned, the Defendants broke their promise and refused to pay this vacation time

14. Plaintiffs were promised a reimbursement upon the return of their uniforms. A deposit of $281.00 was taken out of each plaintiffs' pay check. When the plaintiffs attempted to return the uniforms to retrieve the deposit the Defendants refused accepted the uniforms but refused to reimburse the $281.00. This is tantamount to an unlawful withholding of wages.

15. Liquidated damages in an equal amount to the plaintiff's wages is generally awarded for violations of the FLSA. *See Richard v. Marriott Corp.,* 549 F.2d 303, 305 (4th Cir. 1977). This means, in addition to the minimum wages and liquidated damages owed to each plaintiff, each plaintiff is entitled to an award of an equal amount for liquidated damages.

16. At all times relevant, each Plaintiff's job duties were primarily and exclusively as non-managerial employees.

17. Defendants employed dozens under these unlawful conditions.

18. At all times relevant, Defendants had knowledge of all hours Plaintiffs worked and suffered and permitted Plaintiffs to work.

19. Based on the hours worked and the rate of pay, Defendants rarely paid the Plaintiffs for the accurate time of hours worked.

20. At no time did Plaintiffs perform work that meets the definition of exempt work under the FLSA.

21. At all times relevant, each Plaintiff performed non-exempt duties as his primary work duties and responsibilities.

22. At all times relevant, Plaintiffs did not perform management functions or non-exempt work as his primary work duty.

23. At all times relevant, Plaintiffs did not have or otherwise enjoy discretion or input into hiring, firing, or related discipline of any other employee employed by Defendants.

24. At all times relevant, each Plaintiff did not have authority to or otherwise regularly use or exercise discretionary powers while employed by Defendants.

25. At no time during the period of Plaintiffs' employment did Plaintiffs supervise or manage subordinates, enjoy authority to purchase or set any final purchase price without Defendants' direct oversight or approval, nor did Plaintiffs use any independent discretion in the performance of his highly micro-managed job duties at the Defendants' respective worksites.

26. At all times relevant, Plaintiffs devoted the entirety of his work time to performing non-exempt related work.

## OTHER PUTATIVE PLAINTIFFS

27. Plaintiffs are aware of several current and former security guards employed by Defendants who are similarly situated in that they: (1) worked many hours of overtime for

Defendants; and, (2) were not paid for overtime hours by Defendants as prescribed by law; (3) did not perform work which would qualify them as exempt from the overtime requirements of the FLSA; and (4) have not yet joined this lawsuit either because they do not yet have knowledge of their rights to overtime compensation or on account of a sincere fear that Defendants will retaliate against them or that they will lose their jobs with Defendants if they join this suit.

## EQUITABLE TOLLING

28. At all times during the Plaintiffs' employment with Defendants, Defendants did not post or otherwise make visible or available at Defendants' places of business any poster or information that notified employees of the federal overtime compensation requirement.

29. At all times during the Plaintiffs' employment with Defendants, Defendants did not post or otherwise make available at Defendants' places of business any poster or information that notified employees of any enforcement remedies available to employees who are not paid by employers as required by federal law, including notification that the Department of Labor may recover back wages on behalf of employees or that underpaid employees have a private right of action to file a lawsuit against employers for nonpayment or underpayment of wages in violation of federal law.

30. At all times during Plaintiffs' employment with Defendants, Defendants did not post or otherwise make visible or available at the Defendants' place of business any poster or information that notified employees of the fact that federal law prohibits discrimination against, retaliation against or discharging workers who file a complaint or participate in any proceeding to recover unpaid or underpaid wages under federal law.

31. At all times during Plaintiffs' employment, Defendants explicitly and willfully misinformed each Plaintiff that Plaintiff was not entitled to be paid for overtime hours worked each week in excess of forty at the federally required overtime pay rate.

## **COLLECTIVE ACTION ALLEGATIONS**

32. Plaintiff are pursing this action as an FLSA collective action on behalf of themselves and all other similarly situated individuals.

33. The collective action includes: (a) Current and former employees who worked at any of the Defendants' locations in Virginia between January 1, 2014 to the present; and (b) Who were not paid by Defendants for all hours worked at least rate the equal to the overtime hourly rate as required by the FLSA.

34. In the present case, the questions of law or fact common to the members of the collective action class predominate over any questions affecting only individual collective action class members.

35. Common to Plaintiffs and all collective action class member is that each individual received wages from the Defendants at a rate less than what was promised and at rate less than is required by the FLSA for overtime hours worked each week

36. Specifically, Plaintiffs and each collective action class members are seeking the difference between the overtime compensation received and the FLSA required overtime rate and statutory damages under the FLSA.

37. In the present case, the number of collective action class members is believed to exceed one hundred current and former employees.

38. All class members should be clearly identifiable from the information and records which the Defendants are required to keep under 29 C.F.R. § 516, the Employment Tax Recordkeeping requirements of the Internal Revenue Service, and Code of Virginia § 58.1-102.

## CAUSE OF ACTION:
## VIOLATION OF FEDERAL FAIR LABOR STANDARDS ACT (OVERTIME WAGES)

39. Plaintiffs re-allege and reassert each and every allegation set forth in Paragraphs above, as if each were set forth herein.

40. Section 207(a)(1) of the FLSA provides that "no employer shall employ any of his employees…for a workweek longer than forty (40) hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one-and-one-half (1½) times the regular rate at which he is employed."

41. At all times, each Plaintiff was an "employee" covered by the FLSA, 29 U.S.C. §207(a)(1), and Defendants were Plaintiffs' "employer" under FLSA, 29 U.S.C. § 207(a)(2).

42. Defendants, as Plaintiffs' employer, was obligated to compensate Plaintiff at the overtime rate of one-and-one-half (1½) times his or her regular rate for all hours worked per week in excess of forty (40).

43. At all times, Defendants failed and refused to pay Plaintiffs at the overtime rate of one-and-one-half (1½) times his or her regular rate for all hours worked per week in excess of forty (40).

44. At Defendants' command, and with Defendants' actual knowledge, Defendants suffered or permitted Plaintiffs to regularly work approximately more than forty (40) hours per week.

45. For all hours worked per week by Plaintiffs in excess of forty (40), Defendants paid Plaintiff no overtime wages or complete overtime wages, thereby violating the overtime requirements of the FLSA.

46. Defendants should have paid Plaintiffs at the rate of one-and-one-half (1½) times his regular rate of pay for all hours worked each week in excess of forty (40).

47. An employer who violates the FLSA overtime provision is ordinarily "liable to the employee or employees affected in the amount of their unpaid wages ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

48. The award of liquidated damages is mandatory unless "the employer shows to the satisfaction of the court that the act or omission giving rise [to the FLSA action] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260.

49. The FLSA "plainly envisions" that liquidated damages "are the norm" for violations of the FLSA. *Mayhew v. Wells,* 125 F.3d 216, 220 (4th Cir.1997).

50. The FLSA permits a trial court in its sound discretion to refuse or reduce an award of liquidated damages only where the employer demonstrates *both* good faith *and* reasonable grounds for believing that he was not acting in violation of FLSA. *See Clifton D. Mayhew, Inc. v. Wirtz,* 413 F.2d 658, 661-62 (4th Cir. 1969).

51. The Fourth Circuit has held that the test of the good faith requirement to excuse liability is an objective one and not a subjective one. *Id.*

52. Here, Defendants cannot demonstrate good faith and reasonable grounds for their failure to pay Plaintiffs overtime wages as required by the FLSA.

53. Defendants can point to no authority or good faith basis they relied upon for their

failure to pay Plaintiffs the wages at the FLSA required rate for overtime hours worked each week.

54. On information and belief, at all times during Plaintiffs' employment, Defendants had actual knowledge of the FLSA overtime pay requirement.

55. On information and belief, at all times during Plaintiffs employment, Defendants had actual knowledge that Plaintiffs should have been paid one-and-one half (1½) times their regular rate of pay for hours worked each week in excess of forty (40).

56. On information and belief, at all times during Plaintiffs' employment, Defendants had actual knowledge that the rate and method by which Defendants paid Plaintiff was in direct violation of the FLSA's overtime pay requirement.

57. Defendants' failure and refusal to pay Plaintiffs the proper wages for overtime hours worked as required by the FLSA was willful and intentional, and was not in good faith.

58. As a consequence of the foregoing, Plaintiffs will be entitled to payment of his or her attorney's fees and costs.

59. The FLSA provides that a court "***shall***, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b) (emphasis added).

60. In contrast to other fee-shifting statutes where the award of attorney's fees and costs is discretionary with the court, an award of attorney's fees to a prevailing plaintiff in a FLSA case is mandatory. *See Hensley v. Eckerhart*, 461 U.S. 424 (1983).

61. As a consequence of the foregoing, Plaintiffs are entitled to recover his or her reasonable attorney's fees and costs associated with the prosecution of this case.

62. This court has ruled that the Plaintiffs' counsel's rate of $425.00 an hour "is within the range of reasonable rates approved in the Fourth Circuit" and has approved this rate in a recent

award.  *Jo-Ann Brown, et al. v. Transurban Usa, Inc., et al.,* Case 1:15-cv-00494-JCC-MSN (September 29, 2016).

WHEREFORE, Defendants are liable, to each Plaintiff, and all other similarly-situated individuals, for all unpaid overtime wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

    Respectfully Submitted,
    Plaintiffs
    By Counsel

/s/
Matthew T. Sutter, Esq., VSB 66741
Sutter & Terpak, PLLC
7540A Little River Turnpike, First Floor
Annandale, VA 22003
Telephone: 703-256-1800
Facsimile: 703-991-6116
Email: matt@sutterandterpak.com
Web: www.sutterandterpak.com